Peter J. Woo (SBN 306083)
Vincent L. Chen (SBN 311883)
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, California 92618
Telephone:   (949) 885-1360
Facsimile:   (949) 885-1380
Peter.Woo@jacksonlewis.com
Vincent.Chen@jacksonlewis.com

Attorneys for Defendant
ARDENT MILLS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ARCEO, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>ARDENT MILLS, LLC, a Colorado limited liability company; and DOES 1 to 10, inclusive,<br><br>        Defendants. | CASE NO.: 5:23-cv-001146-AB-E<br><br>[The Honorable Andre Birotte Jr, Courtroom 7A]<br><br>**DEFENDANT ARDENT MILLS, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>[Filed concurrently with Declaration of Mark Kruger in Support of Defendant's Opposition to Plaintiff's Motion to Remand]<br><br>Date: August 11, 2023<br>Time: 10:00 a.m.<br><br>State Complaint filed:   March 3, 2023<br>State FAC filed:      May 16, 2023 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     PROCEDURAL HISTORY ....................................................................... 1

III.    THE REMOVAL STANDARD UNDER EXXON MOBIL ..................... 2

IV.     DIVERSITY OF CITIZENSHIP IS SATISFIED .................................... 3

V.      THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 ..................... 5

      A.      THE evidentiary standard for CALCULATING the amount in controversy ........................................................................................ 5

            1.      The amount in controversy for unpaid wages is $10,446.03. ............... 7

            2.      The amount in controversy for meal premiums is $9,286.20. ............ 9

            3.      The amount in controversy for rest premiums is $18,572.40. .............. 9

            4.      The amount in controversy for waiting time penalties is $6,338.40. ........................................................................................ 10

            5.      The amount in controversy for wage statement penalties is $1,150.00. ........................................................................................ 10

            6.      The amount in controversy for PAGA penalties is at least $167,750.00. .................................................................................... 11

            7.      The amount in controversy for attorneys' fees is $55,000.00. ........... 13

      B.      SUMMARY OF AMOUNT IN CONTROVERSY ..................................... 14

IV.     CONCLUSION ........................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) ...................................................................... 3

*Beck v. Saint-Gobain Containers, Inc.*,
  2016 WL 4769716 (C.D. Cal. Sept. 12, 2016) ........................................ 12

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ............................................................. 13

*Castillo v. Trinity Servs. Grp., Inc.*,
  No. 1:19-cv-01013 DAD, 2020 U.S. Dist. LEXIS 119963 (E.D. Cal. July
  8, 2020) ....................................................................................................... 7

*Cavada v. Inter-Cont'l Hotels Grp., Inc.*,
  No. 19-cv-1675-GPC, 2019 U.S. Dist. LEXIS 190302 (S.D. Cal. Nov. 1,
  2019) ........................................................................................................... 7

*Chavez v. Pratt (Robert Mann Packaging), LLC*,
  No. 19-CV-00719-NC, 2019 U.S. Dist. LEXIS 59399 (N.D. Cal. Apr. 5,
  2019) ..................................................................................................... 7, 12

*Cisneros v. Lerner N.Y., Inc.*,
  2016 WL 4059612 (C.D. Cal. July 25, 2016) ........................................ 12

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ...................................................................... 3

*Danielsson v. Blood Centers of Pac.*,
  No. 19-cv-04592-JCS, 2019 U.S. Dist. LEXIS 222539 (N.D. Cal. Dec.
  30, 2019) ..................................................................................................... 7

*Dart Cherokee Basin Operating Co., LL v. Owens*,
  574 U.S. 81, 135 S. Ct. 547 - 553 (2014) ..................................... 1, 2, 3, 4

*Dupre v. GM*,
  2010 WL 3447082 (C.D. Cal. Aug. 27, 2010) ........................................ 12

*Elizarraz v. United Rentals, Inc.*,
  2:18-CV-09533-ODW (JC), 2019 U.S. Dist. LEXIS 62065 (C.D. Cal.
  April 9, 2019) ................................................................................................ 7

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
  899 F.3d 785 (9th Cir. 2018) ................................................................. 13, 14

*Harris v. KM Indus., Inc.*,
  980 F.3d 694 (9th Cir. 2020) ................................................................... 2, 5

*Heatley v. Lin Rogers Electrical Construction, Inc.*,
  2022 U.S. Dist. LEXIS 43152 ....................................................................... 9

*Ibarra v. Manheim Invs., Inc.*,
  775 F.3d 1193 (9th Cir. 2015) ...................................................................... *1*

*Kastler v. Oh My Green, Inc.*,
  No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS 185484 (N.D. Ca. Oct.
  25, 2019) ...................................................................................................... 12

*LaCross v. Knight Transp. Inc.*,
  775 F.3d 1200 (9th Cir. 2015)) ..................................................................... 6

*Lewis v. Verizon Commc'ns, Inc.*,
  627 F.3d 395 (9th Cir. 2010) .................................................................... 5, 6

*Lewis, Garibay v. Archstone Communities LLC*,
  539 Fed. Appx. 763 (9th Cir. 2013) ........................................................ 6, 13

*Mejia v. DHL Express (USA), Inc.*,
  No. CV 15-890-GHK JCX, 2015 WL 2452755 (C.D. Cal. May 21, 2015) .................. 6

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
  2019 WL 7987117 (C.D. Cal. June 21, 2019) ............................................ 11

*Oda v. Gucci Am., Inc.*,
  Nos. 2:14-CV-7468-SVW, 2015 U.S. Dist. LEXIS 1672 (C.D. Cal. Jan.
  7, 2015) .......................................................................................................... 7

*Patel v. Nike Retail Servs., Inc.*
  58 F.Supp.3d 1032 (N.D. Cal. 2014) ............................................................ 6

*In re Quintus Sec. Litig.*,
  148 F. Supp. 2d 967 (N.D. Cal. 2001) ........................................................ 13

ii

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

*Rea v. Michaels Stores, Inc.*
  742 F.3d 1234 (9th Cir. 2014) .......................................................... 6

*Ritenour v. Carrington Mortg. Servs. LLC,*
  228 F. Supp. 3d 1025 (C.D. Cal. 2017) ............................................ 6

*Salter v. Quality Carriers,*
  974 F.3d 959 (9th Cir. 2020) .......................................................... 4

*Sanchez v. Monumental Life Ins. Co.,*
  102 F.3d 398 (9th Cir. 1996) ...................................................... 2, 3

*Standard Fire Ins. Co., v. Knowles,*
  568 U.S. 588 (2013) ...................................................................... 2

*Thai v. Team Indus. Servs.,*
  2021 U.S. Dist. LEXIS 190015 ..................................................... 2

*Trigueros v. Stanford Federal Credit Union,*
  2021 U.S. Dist. LEXIS 120271 ................................................... 12

**California Cases**

*Murphy v. Kenneth Cole Productions Inc.* (2007)
  40 Cal.4th 1094 ......................................................................... 13

*Naranjo v. Spectrum Security Services* (2022)
  13 Cal.5th 93 ............................................................................. 13

**Other State Cases**

*Feao v. UFP Riverside, LLC,*
  No. CV 17-3080 PSG .................................................................... 5

*Lucas v. Michael Kors*
  (USA) ........................................................................................ 11

*Moppin v. Los Robles Reg'l Med. Ctr.,*
  No. EDCV 15-1551 ..................................................................... 11

**Federal Statutes**

28 U.S.C.
  § 1446(b)(1) ................................................................................. 2
  § 1446(c)(2)(B) ............................................................................ 2

iii

Class Action Fairness Act ...................................................................... 1, 2, 3, 4, 14

**Other State Statutes**

Lab. Code
   § 218.5 ................................................................................................ 13
   § 226(e)(1) .......................................................................................... 12

Labor Code
   § 203 .................................................................................................... 12
   § 226(a) ................................................................................................ 11

CASE NO.: 5:23-cv-01146-AB-E                         DEFENDANT'S OPPOSITION TO
                                                PLAINTIFF'S MOTION TO REMAND

1  **I.    INTRODUCTION**

2       Plaintiff Jose Arceo's ("Plaintiff") Motion to Remand should be denied. The parties

3  are citizens of different states, and Plaintiff's operative complaint, Motion to Remand, and

4  Declaration of Plaintiff Jose Arceo in Support of Plaintiff's Motion to Remand ("Arceo

5  Decl.") provide a reasonable basis for determining that Plaintiff's amount in controversy

6  exceeds $75,000.

7       Defendant properly removed this litigation to the Central District pursuant to *Dart*

8  *Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-86 (2014) which requires

9  only a "short, plain statement" of the basis for removal. Now Plaintiff seeks to remand this

10 Action back to state court by: (1) improperly arguing that Defendant should not be

11 permitted to amend its citizenship; and (2) ignoring his admissions establishing the amount

12 in controversy. As such, Defendant requests the Court deny Plaintiff's Motion to Remand

13 in its entirety.

14 **II.    PROCEDURAL HISTORY**

15      On March 3, 2023, Plaintiff filed a Class Action Complaint for Damages against

16 Defendant in the Superior Court of the State of California in and for the County of San

17 Bernardino, entitled *JOSE ARCEO, on behalf of himself and all others similarly situated,*

18 *vs. ARDENT MILLS, LLC, a Colorado limited liability company; and DOES 1 to 10,*

19 *inclusive,* Case No. CIVSB2305763.

20      On May 16, 2023, Plaintiff filed a First Amended Complaint ("FAC") which alleged

21 identical causes of action in the Complaint with an additional cause of action seeking civil

22 penalties under Labor Code section 2699, the Private Attorneys General Act of 2004

23 ("PAGA"). The operative pleading sets forth the following causes of action:  (1) Failure to

24 Pay All Wages; (2) Failure to Pay All Overtime Wages At The Legal Overtime Pay Rate;

25 (3) Failure to Provide All Meal Periods; (4) Failure to Authorize and Permit All Paid Rest

26 Periods; (5) Failure to Provide Legally-Compliant Rest Periods; (6) Failure to Pay

27 Premium Wages At The Legal Pay Rate; (7) Failure to Timely Furnish Accurate Itemized

28 Wage Statements; (8) Derivative Violations of Labor Code §§ 201-202; (9) Independent

1

Violations of Labor Code §§ 201-202; (10) Penalties Under Labor Code § 2699; and (11) Unfair Business Practices.

On June 15, 2023, Defendant removed this action to the Central District of California.

On July 14, 2023, Plaintiff filed a Motion to Remand along with a declaration in support of his motion.

## III.    THE REMOVAL STANDARD UNDER EXXON MOBIL

In a class action, removal under diversity jurisdiction is proper if the lead plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a); *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 566 (2005). A removing party only needs to prove, by a preponderance of the evidence, the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). The party opposing removal must prove to a "legal certainty" that it is impossible to recover more than $75,000. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (2010). This standard applies when the complaint leaves the amount in controversy unclear or ambiguous. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).

To effectuate proper removal, "a defendant's notice of removal need include only a ***plausible allegation*** that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89 (emphasis added); *see also Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("'Amount at stake' does not mean likely or probable liability; rather, it refers to possible liability.").

The plaintiff can contest the amount in controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (citations and internal

quotations omitted). A factual attack "contests the truth of the . . . allegations" themselves. *Id.* When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy has been satisfied. *Dart*, 574 U.S. at 88.

The 'preponderance' burden requires the defendant to establish it is "more likely than not" that the amount in controversy exceeds $75,000. *Sanchez*, 102 F.3d at 404 (internal quotation omitted). The defendant must produce "competent" evidence establishing the amount in controversy exceeds the jurisdictional amount. *Id.* The type of evidence to be submitted by the parties "includ[es] affidavits or declarations, or other summary-judgment-type evidence." *Ibarra*, 775 F.3d 1193, 1197 (9th Cir. 2015).

"A removing defendant is permitted to rely on a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1199) (internal quotations omitted). An assumption may be reasonable if it is founded on the allegations of the complaint. *Id.* (noting that where a "pattern and practice" is alleged, an assumption of something less than 100% may be warranted). A defendant is also allowed to present evidence that was not originally included in the removal notice. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 fn.1 (9th Cir. 2002) (district court properly considered evidence submitted in defendant's opposition to motion to remand, even though it was not included in the initial notice of removal).

## IV.   DIVERSITY OF CITIZENSHIP IS SATISFIED

Citizenship of the parties in this Action is determined by their citizenship status ***at the Action's commencement***. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986) (emphasis added). During the initiation of this Action, Plaintiff was a citizen of California and Defendant was a citizen of the following states: Colorado, Delaware, Illinois, and Minnesota.

When Defendant filed its Notice of Removal, the moving papers alleged that Plaintiff is a citizen of California. Notice of Removal ¶¶ 9-10. The pleadings also alleged that Defendant was a citizen of Colorado due to its state of incorporation and principal

place of business. *Id.* ¶¶ 11-15. Therefore, the Notice of Removal adequately alleged that the parties were citizens of different states.

Plaintiff makes several attempts to misrepresent the law by arguing that Defendant did not ***plausibly allege*** diversity of citizenship. First, Plaintiff cites to *McDonald v. Karkanen*, Case No. 18-CV-06992-EDL, 2018 U.S. Dist. LEXIS 215234, at *3 (N.D. Cal. Nov. 29, 2018) for the erroneous proposition that Defendant failed to plausibly allege diversity of citizenship. Admittedly, Defendant mistakenly claimed it was a Colorado citizen under the legal standard set for corporations. Nevertheless, Defendant's error is distinguishable from the facts in *McDonald* where the removing party only alleged the following grounds for removal: (1) defendant removed the action to federal court; (2) defendant was not served with the complaint; (3) the removal was timely; and (4) defendant attached all copies of pleadings it received to the removal papers. *McDonald* is distinguishable from the facts in this case because Defendant specifically addressed the citizenship of the parties in the Notice of Removal.

Second, Plaintiff erroneously argues that Defendant cannot amend its citizenship because doing so will add a new basis for diversity jurisdiction. He misrepresents the law by citing to three cases as the legal basis for prohibiting Defendant from amending its citizenship. *O'Halloran v. Univ. of Washington,* 856 F.2d 1375, 1381 (9th Cir. 1988) (a removing party cannot establish diversity because it was an unincorporated association); *Barrow Development Co. v. Fulton Ins. Co*., 418 F.2d 316, 217-18 (9th Cir. 1969) (removal petition was inadequate and unable to be amended because it simply alleged "plaintiff was a citizen of Alaska and defendant of New York" without disclosing the state of incorporation or principal place of business) and; *Ortiz v. Tara Materials, Inc.*, 2021 U.S. Dist. LEXIS 241819, at *3 (S.D. Cal. Dec. 17, 2021) (changing the damages theory from an aggregation method to a single plaintiff method was an improper amendment). None of these cases are remotely similar to Defendant's situation in seeking to clarifying its citizenship status.

CASE NO.: 5:23-cv-00146-AB-E

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

A trial court may permit a party to amend a defective jurisdictional allegation. 28 U.S.C. § 1653. "Defective jurisdictional allegations are not fatal ... [unless] there is a 'total want of jurisdiction' as opposed to an 'error in the exercise of jurisdiction.'" *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (2016) (citing *Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir. 1985); *see Snell v. Cleveland, Inc.*, 316 F.3d 822, 824, 828 (9th Cir. 2002) (amendment to correct a defective allegation of diversity was proper because the parties were citizens of different states). Central District courts have also followed suit. *See Berkshire Life Ins. Co. of Am. v. Medina*, Case No. CV 21-9070 PA (KSx), 2022 U.S. Dist. LEXIS 78383, at *3 (granting leave to amend pleadings in order to properly alleged citizenship for a limited liability corporation); *Courtois v. Shellpoint Mortg. Servicing, LLC*, Case No. CV 20-4095 PA (PVCx), 2020 U.S. Dist. LEXIS 104468, at *7 ("a district court may, and should, grant leave to amend when it appears that subject matter jurisdiction may exist—even though the complaint inadequately alleges jurisdiction").

A limited liability corporation "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Defendant's sole member is Ardent Mills Holdings LP. Declaration of Mark Kruger (" Kruger Decl."), ¶ 4. A limited partnership is a citizen of all states for which its partners are citizens. *Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 Fed.Appx. 62, 64 (9th Cir. 2011). Ardent Mills Holdings LP's partners are citizens of the following states: Colorado, Delaware, Illinois, and Minnesota. Kruger Decl., ¶¶ 6-19. Thus, diversity exists because Plaintiff and Defendant are citizens of different states.

## V.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

### A.    THE EVIDENTIARY STANDARD FOR CALCULATING THE AMOUNT IN CONTROVERSY

When a plaintiff mounts a factual attack, the burden is on the defendant to show "that the amount in controversy exceeds the jurisdictional threshold by a preponderance of the evidence." *Van Steenhuyse v. UBS Fin. Servs.*, 317 F. Supp. 3d 1062, 1066 (citing *Urbino v. Orkin Servs. of Cal.*, 726 F.3d 1118, 1121-22 (9th Cir. 2013). However, "[a]

defendant may rely on reasonable assumptions to prove that it has met the statutory threshold." *Id.* at 701 (citing *Ibarra,* 775 F.3d at 1197). "A defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty." *Id.* (citing *Dart,* 574 U.S. at 88–89). And district courts are not required to perform "a detailed mathematical calculation of the amount in controversy before determining whether [a defendant] has satisfied its burden." *Id.* A theory of damages for satisfying the amount in controversy "may rely on reasonable assumptions." *Canesco v. Ford Motor Co.* 570 F. Supp. 3d 872, 888 (2021) (citing *Arias v. Residence Inn by Marriott*, 936 F.3d at 922 (9th Cir. 2015)).

When assessing the amount in controversy, a court must "***assume that the allegations of the complaint are true*** and assume that a jury will return a verdict for the plaintiff ***on all claims made in the complaint***." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (emphasis added); *see also Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017) ("In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim.").

When an operative pleading alleges a pattern and practice of Labor Code violations, the defendant is permitted to make reasonable assumptions about the violation rates based on the allegations in pleading. Courts have found violation rates between 25 percent to 60 percent to be reasonable based on "pattern and practice" and "policy and practice" allegations. *Castillo v. Trinity Servs. Grp., Inc.,* No. 1:19-cv-01013 DAD (EPGx), 2020 U.S. Dist. LEXIS 119963, at *19 (E.D. Cal. Jul. 8, 2020) (citations omitted); *see, e.g., Elizarraz v. United Rentals, Inc.*, 2:18-CV-09533-ODW (JC), 2019 U.S. Dist. LEXIS 62065, at *3-4 (C.D. Cal. April 9, 2019) (finding a 50% violation rate for missed meal periods reasonable based on "pattern and practice" allegations); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *5 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate reasonable based on "pattern and practice" allegations).

### 1.    The amount in controversy for unpaid wages is $10,446.03.[1]

Plaintiff's operative pleading provides a reasonable basis for calculating the amount in controversy for unpaid wages. First, Plaintiff's operative complaint alleges Defendant failed to pay all wage because:

> [A]s a matter of established company policy and procedure … [Defendant] *consistently*: … (b) Required the members of the Wage Class to wear integral and indispensable uniforms, equipment and/or safety gear; (c) Failed to pay the members of the Donning Class for the time spent putting on and taking off these uniforms, equipment and/or safety gear, *including before their shifts*, *during their clocked-out meal periods*, and *after their shifts*; and, as such, (d) Scheduled to work and/or required the members of the Wage Class to work without paying for all time they were Under Defendants' control. FAC, ¶ 40 (emphasis added).

Second, Plaintiff admits:

> During my employment with [Defendant], around *two or three times a week*, after clocking out for lunch, I would remove my protective gear … Then, after I ate, I had to put all this back on before clocking back in. I would spend approximately *five to ten minutes removing my protective gear* and then another approximately *five to ten minutes putting my protective gear back on* … Arceo Decl., ¶ 2 (emphasis added).

Third, Plaintiff's Motion to Remand concedes that Plaintiff spent 60 minutes a week donning and doffing protective gear during his meal period. Motion to Remand, p. 6:1-2. Although the operative complaint expressly states "[Defendant] [f]ailed to pay … for the time spent putting on and taking off these uniforms, equipment and/or safety gear, including before their shifts … and after their shifts" (FAC, ¶ 40(c)), Plaintiff cannot

---

[1] This amount does not include additional unpaid overtime based on Plaintiff's allegation that Defendant failed to pay Plaintiff at the appropriate overtime rate based on earned "nondiscretionary compensation including but not limited to bonuses, Plant Incentives, and/or 'Taxable Gift-Non." FAC ¶ 54(c)-(d).

7

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

circumvent federal jurisdiction by using a self-serving declaration to erase his allegations of pre- and post-shift donning and doffing. *Leon-Calderon v. Old Dominion Freight Line, Inc.*, Case No. 2:22-cv-08930-MCS-KS Inc., 2023 U.S. Dist. LEXIS 23234, at *6 (C.D. Cal. Feb. 10, 2023); *Cotoc v. Dolex Dollar Express, Inc.*, Case No. LA CV20-06066 JAK (MAAx), 2021 U.S. Dist. LEXIS 161240, at *14 (C.D. Cal. Aug. 25, 2021). "This principle is consistent with the rule that parties are bound by the judicial admissions in their pleadings." *Cotoc*, 2021 U.S. Dist. LEXIS, at *14. "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). *See also Mejia v. DHL Express (USA), Inc.*, 2015 U.S. Dist. LEXIS 67212 at *4 (C.D. Cal. May 21, 2015) (finding a 100% violation rate reasonable when there is a "uniform" practice and policy alleged in the complaint).

Plaintiff's operative complaint, declaration, Motion to Remand, and supporting case law provide a reasonable basis for concluding: (1) Plaintiff was required to don and doff protective equipment ***each*** workday (FAC, ¶ 40(a)); (2) the donning and doffing occurred before and after his shift (FAC, ¶ 40(b)); (3) each instance of donning or doffing lasted approximately 7.5 minutes[2] (Arceo Decl., ¶ 2); and (4) Plaintiff incurred 60 minutes of unpaid work each week as a result of donning and doffing during his meal periods (Motion to Remand, p. 6:1-2).

Thus, each week Plaintiff's unpaid work consists of: (1) 70 minutes of pre- and post-shift donning and doffing (7.5 minutes x 2 times a day x 5 days a week); and (2) 60 minutes of donning and doffing during his meal periods. Therefore, Plaintiff's damages for unpaid

---

[2] The value of 7.5 minutes for each instance of donning and doffing is based on Plaintiff's declaration stating he spent "approximately five to ten minutes removing my protective gear and then another approximately five to ten minutes putting my protective gear back on." Arceo Decl., ¶ 2.

8

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

wages are approximately: **$10,446.03** (2.25 hours [130 minutes of unpaid time per week] x $27.64 per hour[3] x 168 weeks[4]).

### 2. The amount in controversy for meal premiums is $9,286.20.[5]

Plaintiff's operative complaint and declaration provide a reasonable basis for calculating the amount in controversy for meal premiums. His operative complaint alleges that Defendant engaged in a pattern and practice of failing to provide meal periods because "[a]s a matter of Defendant's established company policy Defendants failed to always comply with meal period requirements." FAC ¶ 69. A 50 to 60 percent violation rate is a reasonable assumption when a plaintiff alleges a "pattern and practice" of meal period violations. *Castillo*, 2020 U.S. Dist. LEXIS *7; *Elizarraz*, 2019 U.S. Dist. LEXIS *3-4; *Oda*, 2015 U.S. Dist. LEXIS at *5.

In addition, Plaintiff admits he spent two or three days each week donning and doffing during his meal periods. Arceo Decl., ¶ 2. This alone is sufficient evidence to serve as a reasonable basis for concluding Plaintiff suffered approximately 2.5 meal period violations each week. Therefore, Plaintiff's damages for meal premiums are approximately: **$9,286.20** (2.5 meal period violations per week x $22.11 per violation[6] x 168 weeks).

### 3. The amount in controversy for rest premiums is $18,572.40.[7]

Plaintiff's operative complaint provides a reasonable basis for calculating the amount in controversy for rest premiums. His operative complaint alleges "Defendant's

---

[3] This hourly rate is based on Plaintiff's unpaid time consisting of straight time and overtime. Motion to Remand, p. 6, fn. 2. For the purposes of determining unpaid wages, Plaintiff's average hourly rate is $27.64 per hour ([$33.16 + $22.11]/2).

[4] Plaintiff was employed from October 23, 2017 through May 25, 2022. The statute of limitations in this action commences on March 3, 2019, four years prior to the filing of the Complaint. California Business & Professions Code § 17200, *et seq*. There are at least 168 weeks between March 3, 2019 through May 25, 2022.

[5] This amount does not include additional unpaid meal premiums based on Plaintiff's allegation that Defendant failed to pay Plaintiff at the appropriate meal premium rate based on other earned remuneration. FAC ¶¶ 102, 107.

[6] This rate is based on Plaintiff's assertion his average hourly rate of pay was $22.11 per hour. Motion to Remand, p. 6, fn. 1.

[7] This amount does not include additional unpaid rest premiums based on Plaintiff's allegation that Defendant failed to pay Plaintiff at the appropriate rest premium rate based on other earned remuneration. FAC ¶¶ 102, 107.

---

rest period policy required the members of the On Duty Rest Period class to remain on duty during their rest periods." FAC ¶ 90. "As such, the members of the On Duty Rest Period Class were discouraged from taking legally-compliant breaks in violation of *Brinker Restaurant Corp. v. Superior Court* (2021) 53 Cal.4th 1004, 1040." *Id.* ¶ 91. "As a matter of Defendants' established company policy, … Defendants denied the taking of legally protected breaks by … prevent[ing] the members of the On Duty Rest Period Class from taking duty-free rest periods in areas other than those dictated by Defendants and to forbid members of the On Duty Rest Period Class from leaving Defendants' facilities." *Id.* ¶ 92.

Based on the operative pleading, Plaintiff's express allegations are sufficient evidence to conclude that Defendant uniformly and consistently failed to provide any duty-free rest periods. Therefore, Plaintiff's damages for rest premiums are approximately: **$18,572.40** (5 rest period violations per week x $22.11 per violation x 168 weeks).

### 4. The amount in controversy for waiting time penalties is $6,338.40.

Plaintiff's Motion to Remand does not dispute the amount in controversy for waiting time penalties. His operative complaint alleges "Defendants willfully failed to pay [similarly situated Class Members] their entire wages due and owing at the time of their termination or within 72 hours of their resignation." FAC ¶ 128. Plaintiff's operative complaint and declaration admit he is entitled to unpaid wages, meal period premiums, and rest period premiums. His pay records show he regularly worked at least 8 hours each workday. Therefore, Plaintiff's damages for waiting time penalties are approximately: **$6,338.40** (final rate of pay of $26.41 per hour x 8 hours each day x 30 days).

### 5. The amount in controversy for wage statement penalties is $1,150.00.

Plaintiff's Motion to Remand does not dispute the amount in controversy for wage statement penalties. His operative complaint alleges "Defendants did not and still do not furnish [Plaintiff and Class Members] with an accurate itemized wage statement ..." FAC ¶ 116. "Under Labor Code § 226(e), [Plaintiff and Class Members] are entitled to $50.00 per employee for the initial pay period in which a violation hereunder occurs and $100.00

10

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000.00." FAC ¶ 121. Defendant paid Plaintiff on a weekly basis, and there are 12 pay periods between March 3, 2022 and May 25, 2022. Plaintiff's operative complaint and declaration concede that he is entitled to unpaid wages, meal period premiums, and rest period premiums. Therefore, Plaintiff's damages for waiting time penalties are approximately: **$1,150.00** ($50 initial penalty + [11 pay periods x $100 penalty per pay period]).

### 6.  The amount in controversy for PAGA penalties is at least $167,750.00.

Plaintiff's operative complaint provides a reasonable basis for calculating the amount in controversy for PAGA penalties. His operative complaint alleges "Under Labor Code § 2699(a) … the aggrieved employees seek recovery of all applicable civil penalties, as follows … (e) [] for civil penalties under Labor Code § 226.3 … in the amount of $250 for each aggrieved employee per pay period for each violation and $1,000 for each aggrieved employee for each subsequent violation." FAC ¶ 156(e). At the time of removal, this allegation was plead in Plaintiff's operative complaint and alleged in the Notice of Removal. FAC ¶¶ 139-165; Notice of Removal ¶ 2. It is permissible to amend the pleadings to add sufficient facts to clarify the amount in controversy for allegations in the Notice of Removal. *See Alexander v. FedEx Ground Package Sys.*, Case No. C 05-38 MHP, 2005 U.S. Dist. LEXIS 5129, at * 8-9 (N.D. Cal. Mar. 24, 2005) (permitting defendants to amend their notice of removal, which asserted in a conclusory manner that the amount in controversy was satisfied, to clarify facts asserted in their removal notice); *Salazar v. Avis Budget Grp.*, Case No. 07CV64 IEG (WMc), 2007 U.S. Dist. LEXIS 107526, at * 9-10 (S.D. Cal. May 2007) (citing *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1093-94 (C.D. Cal. 2005) (the may incorporate post-removal evidence into its determination whether the requisite amount is in controversy)). As such, the amount in controversy for PAGA damages is not a new theory of liability. Thus, Defendant may include Plaintiff's individual PAGA penalties towards the amount in controversy.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Plaintiff's operative complaint "alleges that 'Plaintiff[] is entitled to recover . . . two hundred fifty dollars ($250) for each employee for each pay period for the initial violation, and for each subsequent violation, one thousand dollars ($1000) for each underpaid employee for each pay period … [w]hether or not Plaintiff[] [is] entitled to recovery of the heightened $1,000 penalty for subsequent violations on the merits is not at issue; rather, the Court is concerned only with the amount in controversy ***as alleged in the [operative] Complaint*** (emphasis added). *Flores v. Marriott Resorts Hospitality Corp.*, Case No. CV 18-8012 JVS (JPRx), 2019 U.S. Dist. LEXIS 6604, at *11-12 (C.D. Cal. Jan. 7, 2019) (emphasis added). As such, "Plaintiff's alleg[ation] that [he was] entitled to recover $1,000 for each violation subsequent to the initial violation, [permits ***that heightened number [to be] appropriately used in determining the amount in controversy***." *Id.* (emphasis added).

For the purposes of calculating individual PAGA penalties arising from Labor Code section 226.3, the statute of limitation is not limited to one year prior to the filing of this Action. *Id.* at *9-10; s*ee Geographic Expeditions, Inc.*, 599 F.3d at 1108 ("[J]ust because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense.") (internal citations omitted); *Riggins v. Riggins*, 415 F.2d 1259, 1262 (9th Cir. 1969) ([T]he possibility of a [statute of limitations] defense being valid does not affect the jurisdiction of the district court to hear and determine the controversy."); *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972 MMM (JCGx), 2012 U.S. Dist. LEXIS 86975, at *10 (C.D. Cal. Jun. 22, 2012) ("While [plaintiff] is correct that the statute of limitations makes it doubtful that class members can recover [] penalties for a period of time longer than a year, the fact that [defendant] may assert a limitations defense does not limit the relief sought in the complaint."). Thus, for the purposes of determining the amount in controversy, the relevant time period for this claim covers March 3, 2019 (four years prior to the filing of this Action) through May 25, 2022 (the end of Plaintiff's employment).

Because defendant paid Plaintiff on a weekly basis, there are approximately 168 pay periods between March 3, 2019 through May 25, 2022. As discussed above, Plaintiff's

CASE NO.: 5:23-cv-00146-AB-E                    DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

allegations of unpaid wages, meal premiums, and rest premiums provide a reasonable basis to conclude a 100 percent violation rate for Labor Code section 226. Since a violation of Labor Code section 226.3 is predicated on an underlying violation of Labor Code section 226, it is a reasonable conclusion that Plaintiff suffered a violation for 168 pay periods. Therefore, Plaintiff's damages for PAGA penalties based on violations of Labor Code section 226.3 are approximately: **$167,750.00** ($250 initial penalty + [167 pay periods x $1,000 penalty per pay period]). [8]

### 7.    The amount in controversy for attorneys' fees is $55,000.00.

In Defendant's Notice of Removal, its calculation of attorneys' fees are reasonable and supported by law. In his Motion to Remand, Plaintiff cites to *Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001) and *Kanter v. Warner-Lamber Co.*, 265 F.3d 853, 858 (9th Cir. 2001) for the proposition that attorneys' fees must be divided among all class members when calculating the amount in controversy.

*Gibson* and *Warner-Lamber* are distinguishable from the facts in this Action. In *Gibson*, 261 F.3d 927, 932, the court determined attorneys' fees would be apportioned between class members in a class action brought pursuant to the Song Beverly Warranty Act and California's Consumer Legal Remedies Act (this case concerned the sale of cars with defective paint). The claims in *Warner-Lamber* also relate to consumer goods and were brought under California's Consumer Legal Remedies Act and other related consumer protection laws (this action concerned the sale of head lice treatment). Neither of these cases are wage and hour class actions seeking the recovery of unpaid wages, meal premiums, rest premiums, and other derivative claims.

/ / /

/ / /

/ / /

---

[8] This amount does not include Plaintiff's express allegations for individual PAGA penalties based on violations of Labor Code sections 210, 552, 558, 1197.1, and 2699(f), FAC ¶ 156. If included, these amounts would total a *minimum* of $33,500.00 [$100 + (167 pay periods x $200)] ***without*** stacking penalties for multiple violations occurring within the same pay period.

CASE NO.: 5:23-cv-00146-AB-E                    DEFENDANT'S OPPOSITION TO
                                                PLAINTIFF'S MOTION TO REMAND

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In contrast to *Gibson* and *Warner-Lamber*, numerous Central District courts have held the amount in controversy may be reasonably based on the amount of billable hours needed to prosecute an action and the attorney's hourly rate. *Swans v. Fieldworks, LLC*, Case No. 2:22-cv-07250-SPG-MRW, 2023 U.S. Dist. LEXIS 8121, at *6-7 (C.D. Cal. Jan. 17, 2023) (attorneys' fees in the amount of $60,000, based on an estimate of 100 hours and a billable rate of $600 per hour, was appropriate for a wage an hour class action); *Bockrath v. Apt. Inv.* & Mgmt. Co., Case No. CV 20-04179-CJC (PJWx), 2020 U.S. Dist. LEXIS 111684, at *6 (C.D. Cal. Jun. 25, 2020) (attorneys' fees in the amount of $86,000 did not need to be split between four plaintiffs); *Sanchez v. Russell Sigler, Inc.*, Case No. CV 15-01350-AB, 2015 U.S. Dist. LEXIS 55667, at *22-23 (C.D. Cal. Apr. 2015) (for the purpose of calculating the amount in controversy in a wage and hour class action, a court will not split the attorneys' fees among all class members).

As explained in Defendant's Notice of Removal, District Courts in the Ninth Circuit have acknowledged "attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case." *Lippold v. Godiva Chocolatier, Inc.*, 2010 U.S. Dist. LEXIS 47144, at *11 (N.D. Cal. Apr. 15, 2010); *see also Cagle v. C&S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS 21571, at *30 (E.D. Cal. Feb. 18, 2014). Based on Plaintiff's counsel's experience, it is not unreasonable to expect a blended billing rate of at least $550. Notice of Removal ¶ 28. Therefore, it is reasonable to calculate the attorneys' fees to be approximately: **$55,000** ($550 per hour x 100 billable hours).

**B.    SUMMARY OF AMOUNT IN CONTROVERSY**

| Claim | Opposition to Remand - Amount in Controversy |
|---|---|
| Unpaid Wages | $10,446.03 |
| Meal Premiums | $9,286.20 |
| Rest Premiums | $18,572.40 |
| Wage Statement Penalties | $1,150.00 |
| Waiting Time Penalties | $6,338.40 |

14

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

| Claim | Opposition to Remand - Amount in Controversy |
|---|---|
| PAGA Penalties (226.3) | $167,750.00 |
| PAGA Penalties (others) | $33,500.00 (without stacking) |
| Attorneys' Fees | $55,000.00 |
| **TOTAL** | **$302,043.03** |

## IV.    <u>CONCLUSION</u>

Defendant has provided sufficient evidence to support a calculated amount in controversy that establishes subject matter jurisdiction. Accordingly, this Court should deny Plaintiff's Motion to Remand.

Dated:    July 21, 2023                    JACKSON LEWIS P.C.

By:    /s/ Vincent L. Chen
Peter J. Woo
Vincent L. Chen

Attorney for Defendant
ARDENT MILLS, LLC

CASE NO.: 5:23-cv-00146-AB-E                    DEFENDANT'S OPPOSITION TO
                                               PLAINTIFF'S MOTION TO REMAND

# PROOF OF SERVICE

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CASE NAME: Jose Arceo v. Ardent Mills, et al.**

**CASE NUMBER:  5:23-cv-001146**

I am employed in the County of Irvine, State of California.  I am over the age of 18 and not a party to the within action; my business address is 200 Spectrum Center Drive, Suite 500, Suite 2500, Irvine, California 92618.

On July 21, 2023, I served the foregoing document described as:

**DEFENDANT HDR ENGINEERING, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| Emil Davtyan<br>Gregg Lander<br>Vanessa Ruggles<br>DAVTYAN LAW FIRM<br>1635 Pontius Avenue, floor 2<br>Los Angeles, CA  90025-3361 | T:    (424) 320-6420<br>F:    (424) 320-6454<br>E:    Emil@davtyanlwaw.com<br>       Gregg@davtyanlaw.com<br>       Vanessa@davtyanlaw.com |
| | Attorneys for Plaintiff<br>JOSE ARCEO |

**[XX] BY NOTICE OF ELECTRONIC FILING**.   The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E) and L.R. 5-4.1.

**[XX] FEDERAL** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 21, 2023, at Irvine, California.


*/s/ Aracely Escobedo*
Aracely Escobedo

4856-4899-3137, v. 2